ESTHER WAXLER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent.
Waxler v. Commissioner
Docket Nos. 7069-74, 504-75.
United States Tax Court
T.C. Memo 1976-239; 1976 Tax Ct. Memo LEXIS 164; 35 T.C.M. (CCH) 1041; T.C.M. (RIA) 760239; August 2, 1976, Filed Seymour L. Ellison and Daniel W. Levin, for the petitioner. Cynthia B. White, for the respondent. HALL MEMORANDUM FINDINGS OF FACT AND OPINION HALL, Judge: Respondent determined deficiencies in petitioner's individual Federal income tax returns for the years 1970 and 1971 in the amounts of $2,701 and $2,209, respectively. The *165 sole issue for decision is whether amounts paid to petitioner by her former husband pursuant to an integrated property settlement agreement are alimony within the meaning of section 71(a)(1) [1] and therefore includable in petitioner's gross income. FINDINGS OF FACT Some of the facts have been stipulated and are so found. Petitioner resided in Los Angeles, California, when she filed her petition. On May 21, 1941, petitioner married Samuel H. Waxler ("Dr. Waxler"). They have one son, Fred Eric, who was born on October 14, 1948. Due to irreconcilable differences petitioner and Dr. Waxler separated on December 4, 1964. On January 21, 1965, Dr. Waxler filed a complaint for divorce in the Superior Court for the City and County of San Francisco. On March 20, 1965, petitioner filed an answer and a cross-complaint for divorce, stating she was without sufficient property, funds, income, or credit with which to defray expenses for her support and maintenance, her future anticipated medical expenses, the support of their minor son, and attorney's fees and court costs *166 for the divorce action. On her cross-complaint, petitioner requested that her husband be ordered to pay $1,000 per month for her support and maintenance, all of her medical bills and expenses, $500 per month for the support and maintenance of their minor child, and $4,000 as reasonable and necessary attorney's fees and court costs. She also asked for the custody of their minor son and all or a portion of the community property for her continued support and maintenance. On November 23, 1965, the Superior Court heard testimony relating to the causes of action for divorce. The parties advised the court that a property settlement agreement would be submitted to the court. It was not, however, until on or about November 22, 1966, after prolonged delay by petitioner's counsel, that the property settlement was finally executed. The Interlocutory Judgment of Divorce was entered on December 6, 1966. The final judgment awarding the divorce to the petitioner was entered on February 9, 1967. In the document entitled "Integrated Property Settlement Agreement, Agreement for the Division of Property, For Payment of Support of Wife, and For Support of Minor Child", the parties embodied their *167 agreement as to the final and complete settlement of their several rights, including their respective property rights, provisions for the future support of petitioner, and the support and custody of their minor child. The integrated property settlement agreement listed the following community property: a residence held in joint tenancy, (2) certain real property held in the name of Dr. Waxler's partnership, San Francisco Medical Dental Associates, (3) a tract of land in Rancho Del Monte, Monterey County, California, held as joint tenants, (4) certain real property located in Rancho Los Laureles, Monterey County, California, an undivided 1/3 interest held as joint tenants, (5) certain stocks, bonds, and investments, (6) a savings account containing approximately $10,391.25, (7) a life insurance policy owned by petitioner, insuring the life of Dr. Waxler in the amount of $40,000, (8) an additional life insurance policy insuring the life of Dr. Waxler in the amount of $10,000, (9) a life insurance policy owned by Dr. Waxler insuring the life of Allan M. Unger, (10) a hospitalization insurance policy, (11) furniture and furnishings in the family residence, (12) a 1962 Oldsmobile automobile, *168 (13) a partnership interest of Dr. Waxler's in the partnership of Samuel H. Waxler, M.D. and Allan M. Unger, M.D., and Dr. Waxler's partnership interest in the San Francisco Medical Dental Associates, (14) proprietary membership in Lake Merced Golf and Country Club, and (15) personal clothing, furs and jewelry of petitioner, and personal clothing and jewelry of Dr. Waxler. The agreement further recited that there was no separate property. Upon execution of the agreement, the community property was divided and the family residence was retained by the parties as tenants in common. Petitioner received the automobile, all of her personal clothing, furs and jewelry, the furniture and furnishings of the family residence, one-half interest in all stocks, bonds and investments, one-half interest in all bank accounts, and one-half interest in the two Monterey County, California, properties. Petitioner agreed to convey to Dr. Waxler all of her right, title, and interest in the partnership of Samuel H. Waxler, M.D. and Allan M. Unger, M.D., and the partnership entitled San Francisco Medical Dental Associates. Dr. Waxler agreed to keep a life insurance policy insuring his life in the amount *169 of $40,000 in full force and effect with petitioner as irrevocable beneficiary as well as owner. The custody of the minor son was given to petitioner, and Dr. Waxler agreed to contribute $125 per month toward the child's support and maintenance. In addition, paragraph 9 of the integrated property settlement provided in part: Husband agrees to pay to wife, during her lifetime, for her support and maintenance the amount of $750.00 per month until such time as wife shall remarry or husband shall die. * * * It is the intention of the parties that the payments made under the provisions of this paragraph 9 should be construed not as separate or severable support payments but as payments made in settlement of the property rights of the parties. And paragraph 21 of the agreement stated: That wife agrees that all income tax payments of all kind relative to any money received from husband shall be paid by wife. Dr. Waxler had paid petitioner $500 per month for her support from the time they separated until the execution of the property settlement. The amount of the payments was increased to $750 per month upon execution of the agreement, and subsequently the amount was voluntarily *170 raised to $900 per month by Dr. Waxler. Prior thereto, however, petitioner had filed on October 23, 1969, a Declaration for Order to Show Case re: Increase in Alimony. The latter proceeding was not pursued in view of the fact the settlement agreement was an integrated agreement not subject to subsequent change in this regard. Since the divorce, Dr. Waxler has, on his tax returns, characterized his monthly payments to petitioner as alimony and has deducted them. Petitioner on her returns did not include these monthly payments in income for 1970 and 1971. Respondent has determined that these payments constituted taxable income to petitioner. OPINION Pursuant to an integrated property settlement agreement entered into in connection with a divorce, petitioner received monthly payments from her former husband during the years at issue. Section 71(a)(1) of the Code provides in pertinent part: If a wife is divorced * * * from her husband under a decree of divorce, * * * the wife's gross income includes periodic payments * * * received after such decree in discharge of * * * a legal obligation which, because of the marital or family relationship, is imposed on or incurred by *171 the husband under a decree or under a written instrument incident to such divorce * * *, Petitioner contends that the payments controverted herein do not represent support payments or alimony but instead constitute payments made in exchange for the relinquishment of her rights in the community property corpus, specifically, her community interest in Dr. Waxler's 2 medical partnerships. "Whether such payments in fact represent alimony or are in consideration of petitioner's interest in the community property is a question that turns upon the facts, and not upon any labels that may or may not have been placed upon them." Ann Hairston Ryker,33 T.C. 924, 929 (1960). See Wilma Thompson,50 T.C. 522, 525 (1968); Blanche Curtis Newbury,46 T.C. 690, 694 (1966). After careful examination of the entire record before us, we think petitioner has failed to show that the payments in controversy were not paid for her support. Prior to the execution of the integrated property settlement, petitioner had no career and was suffering from poor health. Indeed, in her initial answer and cross-complaint filed in the divorce action, petitioner maintained *172 that she was without proper funds, income or credit with which to defray expenses for medical bills, support and maintenance, and legal fees. During their separation, Dr. Waxler provided her $500 per month to pay for these expenses, subsequently increasing this amount to $750 per month and later to $900 per month, each time at petitioner's request, because she deemed the previous amounts insufficient for her needs. [2]
Furthermore, the payments received by petitioner have all of the attributes of support payments, rather than payments for property, including cessation on death or remarriage and, but for the language of paragraph 9, this issue could be easily resolved. The agreement sets out the $750 sum as payable for petitioner's "support and maintenance." However, the agreement also states that "[it] is the intention of the parties that the payments made under the provisions of this paragraph 9 should be construed not as separate or severable support payments but as payments made in settlement of the *173 property rights of the parties." Dr. Waxler testified he understood this language was included to assure that the agreement was integrated and that the amount of the support payments could not thereafter be modified by the Superior Court; it was not because the payments were not intended for petitioner's support. The payments were intended for petitioner's support, to last her lifetime or until she remarries (unless he sooner died in which case life insurance was provided) and no aggregate sum representing a property right was determinable. Paragraph 21 of the agreement provides that petitioner agrees that "all income tax payments of all kinds relative to any money received from husband shall be paid by wife." Dr. Waxler testified that he understood that petitioner was to pay income taxes on the monthly payments which he was to make to her. Separate provisions of the settlement agreement divided the parties' community property, and there is nothing in the record to indicate that petitioner possessed, or at the time of the divorce, believed herself to have possessed, any greater property rights than those for which she was compensated by this division of the property. See *174 Newbury,supra, at 695. Dr. Waxler testified that at no time during the discussions relating to the division of the community property did petitioner even express an interest in or make a request for a half of his interest in the medical partnerships. Petitioner's assertion that the payments were based upon an actuarial determination of the value of the community property rights she transferred and assigned is unsupported by any persuasive evidence. Indeed, the agreement itself fails to fix the value of the community assets and contains no other indication that the parties considered the obligation to make monthly payments as the value equivalent of any of those assets. See Jerome A. Blate,34 T.C. 121, 129 (1960). Petitioner further maintains that the payments herein are not includible in her income as they were not in discharge of a legally imposed obligation for support. The California Civil Code effective at the time the divorce was entered, stated: "* * * [The] court may compel the party against whom the decree or judgment is granted to make * * * suitable allowance for support and maintenance of the other party for his or her life *175 * * *." Cal. Civ. Code sec. 139 (West 1954). The Superior Court approved and incorporated the property settlement agreement in its divorce decree, particularly noting that Dr. Waxler was obligated to pay petitioner $750 per month until she shall remarry or die. However, regardless of whether the payments were in discharge of a legally imposed obligation of support under California law, we are not prevented from characterizing the payments made pursuant to the property settlement as support payments within the purview of section 71(a). See Blanche C. Newbury,supra, at 695-6; Brown v. United States,121 F. Supp. 106, 108 (N.D. Cal. 1954). As stated in the report of the Senate Finance Committee concerning sections 22(k) and 23(a) of the 1939 Code (the predecessors of section 71(a) of the 1954 Code): These amendments are intended to treat such payments as income to the spouse actually receiving or actually entitled to receive them and to relieve the other spouse from the tax burden upon whatever part of the amount of such payment is under present law includable in his gross income. In addition, the amended sections *176 will produce uniformity in the treatment of amounts paid in the nature of or in lieu of alimony regardless of variance in the laws of different States concerning the existence or continuance of an obligation to pay alimony. [S. Rept. No. 1631, 77th Cong., 2d Sess., 1942-2 C.B. 504, 568. See also H. Rept. No. 2333, 77th Cong., 2d Sess., 1942-2 C.B. 372, 409.] We conclude that petitioner has failed to carry her burden of proving that the monthly payments described in paragraph 9 of the property settlement agreement were not monies received for support and maintenance. The payments thus are includable in petitioner's gross income. Decision will be entered for the respondent. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as in effect during the years in issue.↩
2. At one point in 1969, petitioner even filed an order to show cause regarding an increase in "alimony" by an additional sum of $250 per month for "necessary maintenance."↩